CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 17 2018

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MARK S., )
 )
    Plaintiff, )
 ) Civil Action No. 7:17cv00312
v. )
 )
NANCY A. BERRYHILL, ) By: Michael F. Urbanski
Commissioner of Social Security, ) Chief United States District Judge
 )
    Defendant. )

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff Mark S. ("Mark")[1] has filed objections to the report, the Commissioner has responded, and this matter is now ripe for the court's consideration.

I.

Mark raised two arguments on summary judgment and makes the same two arguments in his objections to the magistrate judge's report and recommendation. The purpose of magistrate judge review is to conserve judicial resources. United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007). To that end, the objection requirement set forth

---

[1] Due to privacy concerns, the court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States to use only the first name and last initial of the claimant in social security opinions.

in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." Id. (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997)). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object

to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

3

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, his re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

Mark's objections are, in large part, a reiteration of the arguments he raised on summary judgment and are not the type of specific objections required by Rule 72(b). However, the court has reviewed de novo those portions of the magistrate judge's report to which Mark objected and finds the ALJ's decision is supported by substantial evidence.

## II.

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the

Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III.[2]

Mark first objects to the magistrate judge's conclusion that the RFC adequately accounted for his concerns regarding potential absences from work. Pl.'s Obj., ECF No. 22, at 1–3. Mark argues that the magistrate judge and ALJ disregarded his testimony about experiencing three to four day postictal periods following his seizures because these symptoms were not substantiated by objective medical evidence; however, Mark argues that these periods could never be substantiated by medical evidence unless the seizure occurred in a doctor's office or emergency room. Id. at 1–2. Mark further argues that evidence shows that his retinal detachment and seizure disorder have changed significantly since the decision on his first disability claim in April 2013, such as Jeff Shelton, M.D.'s note that his left eye cannot improve, the development of Lattice degeneration in his right eye, and an increase in seizure medication in July 2015. Id.

These arguments appear to mirror his summary judgment motion's contention that the ALJ failed to conduct a function-by-function analysis pursuant to SSR 96-8p. SSR 96-8p requires the ALJ to "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions [listed elsewhere in the regulations]." SSR 96-8p, 1996 WL 362207, at *1 (July 2, 1996).[3] The ALJ is instructed to include a narrative discussion and cite specific medical facts and

---

[2] Detailed facts about Mark's impairments and medical and procedural history can be found in the report and recommendation and in the administrative transcript (ECF Nos. 8, 21). As such, they will not be repeated here.
[3] Examples of listed physical functions include a claimant's "ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching). . . ." 20 C.F.R. § 416.945(b).

nonmedical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. Id. at *7; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). "'[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, the court agrees with the magistrate judge that the ALJ did not omit relevant evidence and gave a clear explanation for the RFC, which allows for meaningful review. As to Mark's first issue in this objection, regarding his testimony about the length of the postictal period, Mark effectively challenges the ALJ's determination of his credibility because the only evidence supporting this postictal period is his own testimony. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). Because

6

the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Substantial evidence supports the ALJ's credibility determination. The ALJ reviewed Mark's seizure activity during the relevant period of April 2014 to July 2015, addressing Mark's December 2014 seizure questionnaire, his 2014 disability report, his testimony about the complications from his seizure disorder at his May 2016 hearing, and his medical records from Lewis Gale Medical Center and New Horizons Health Care. (RA 15–17). Based on the thoroughly reviewed evidence, the ALJ determined that Mark's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (RA 15). The ALJ noted that Mark's objective findings were relatively benign and the record reflected conservative treatment. (RA 18). The court finds no error in the magistrate judge's conclusion that the ALJ's credibility assessment was supported by substantial evidence.

The magistrate judge also correctly determined Mark's second issue within this objection, where he argued that the record showed a significant change in his seizure disorder or retinal detachment since his April 2013 disability determination. As explained by the Fourth Circuit in Albright v. Commissioner, 174 F.3d 473 (4th Cir.1999), the Commissioner's prior adverse final determination is "highly probative" of Mark's continuing functional capacity to perform the exertional and non-exertional requirements of a full range of work with limitations. See May v. Colvin, No. 5:12CV083, 2013 WL 4010981, at *6 (W.D. Va. Aug. 5, 2013). Moreover, the objective medical evidence does not show Mark's alleged

7

impairments to have significantly worsened, and the evidence considered for the prior decision does not differ markedly from the evidence considered in his current claim.

Substantial evidence supports that Mark's seizure disorder has not significantly changed since April 2013. Mark claims that the frequency and severity of his postictal symptoms worsened since 2013, as evidenced by his increase in seizure medication and Ruthie Peevy, FNP's note to not drive, operate machinery, swim, or work on ladders or heights in July 2015. Pl.'s Obj., ECF No. 22, at 2-3 (citing RA 305). The ALJ reviewed Ms. Peevy's July 2015 treatment note that Mark should not drive or operate heavy machinery and should avoid work on ladders or at heights, and noted the adjustment to his medications; the ALJ determined that this evidence did not reflect a significant change. (RA 17–18). Even so, the ALJ accounted for some of Ms. Peevy's instructions in the RFC, which explicitly stated that Mark "can never climb ladders, ropes or scaffolds, can occasionally balance, can frequently climb ramps or stairs, stoop, kneel, crouch, or crawl, and should avoid moderate exposure to hazards." (RA 14). The ALJ considered the evidence that Mark argues show a significant change in his seizure disorder but determined that it did not amount to such a change. The ALJ ultimately crafted Mark's RFC to accommodate the seizure limitations supported by the evidence.

Regarding the magistrate judge's conclusion that Mark pointed to no evidence that his retinal detachment changed significantly since April 2013, the report is correct that there has been no functional change for purposes of the RFC. Rep. & Recomm., ECF No. 21, at 8–9. Mark points to Dr. Shelton's note that his left eye cannot improve. Pl.'s Obj., ECF No. 22, at 2 (citing RA 322). However, the April 2013 decision already limited his RFC to

occupations that did not require left eye vision. (RA 57). The current RFC also limits Mark "to occupations that can be performed with monocular vision. . . ." (RA 14). It is unclear what additional limitation Mark thinks is necessary for his left eye. Regarding his right eye, Mark points to Dr. Shelton's finding that Mark developed Lattice degeneration and his own testimony that he had developed a film over his eye. Pl.'s Obj., ECF No. 22, at 2 (citing RA 36–37, 322). Dr. Shelton noted in his May 19, 2016 letter that Mark needs a retinal specialist to confirm that his right eye's health is stable; following a comprehensive examination on May 23, 2016, Craig Hartranft, MD noted "r/o lattice-OD" but did not state any functional limitations. (RA 322–324). Mark points to no vision examination that shows functional limitations of the right eye during the relevant period. This was not a significant change for purposes of the RFC as there was no objective evidence of functional limitations. Substantial evidence supports that the RFC did not require a limitation for Mark's right eye.

The ALJ exhaustively considered the medical evidence and Mark's testimony in setting the appropriate number of absences in the RFC. The court agrees with the magistrate judge that the ALJ did not omit relevant evidence and gave a clear explanation for the RFC. Further, the ALJ provided sufficient explanation for his RFC determination to allow meaningful review under SSR 96-8p. Mark's objection regarding the number of absences provided for in the RFC is overruled.

### IV.

Mark next objects to the magistrate judge's conclusion that the ALJ built a logical bridge between the evidence and his assessment of Mark's allegations. Pl.'s Obj., ECF No. 22, at 3–4. Mark is vague about what evidence the ALJ failed to consider for determination

of his RFC. In support of his argument, he contends that his work attempts were short lived due to his impairments; his failure to list every postictal symptom in an emergency room visit and his unremarkable EKG and CT results did not make his allegations unsupported; and "the ALJ generically asserts that the treatment plaintiff received is not the type of treatment one would expect for a totally disabled person but does not point to any other evidence plaintiff should have undergone." Id.

An ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. See Monroe, 826 F.3d 176, 189 (4th Cir. 2016); see also Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017). While an ALJ may not overlook "the limited extent of [a]ctivities described by" a claimant, see Brown, 873 F.3d at 269, it is proper for an ALJ to rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability, see Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

Here, the ALJ carefully considered Mark's medical history together with his allegations regarding his seizures and daily activities. (RA 15–18). The ALJ gave reasons for his determination, relied on the relatively benign record evidence to do so, and noted how medical treatment has been conservative. The ALJ was under no obligation to list the types of medical treatment that may support a more restrictive RFC determination. As explained above, substantial evidence supports the ALJ's determination regarding Mark's postictal symptoms. The ALJ thoroughly explained how he reached his determination, which allowed for meaningful review, and Mark simply disagrees with it. Regarding Mark's prior work attempts, the ALJ does not appear to have substantially relied on this work history in

assessing Mark's RFC or credibility. The ALJ noted that Mark had an inconsistent pattern of work activity over the last fifteen years, but that his earnings were well below the level of substantial gainful activity. (RA 15). The ALJ further noted that Mark reported injuring himself while at work in 2015. (RA 15). While Mark's work history was discussed, the driving force of the ALJ's decision appears to be the prior unfavorable decision and lack of medical evidence to support his allegations. (RA 14–18).

The court is satisfied that there was substantial evidence to support the ALJ's credibility determination, the ALJ built a "logical bridge from the evidence to his conclusion," and that the decision contained sufficient explanation to allow meaningful review. See Monroe, 826 F.3d at 189; see also Chafin, 1993 WL 329980, at *2. Mark's objection that the ALJ failed to build a logical bridge between the evidence and his assessment of his allegations is overruled.

V.

The court has reviewed the magistrate judge's report, the objections to the report, and the administrative record and, in so doing, made a de novo determination of those portions of the report to which Mark properly objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: 09/17/2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge